Moncure, J.
This suit was brought on an obligation of Robert Hawkins to John Perkins, dated the 4th day of May 1813, payable thirty days after date, for 1400 dollars, “ for value received in flour.” John Perkins died before the 4th of April 1816, on which day administration on his estate was granted to Benjamin Perkins, Richard Perkins and James W. Dibrell of the Court of hustings of Lynchburg. In the spring of 1819, suit was brought on the bond in the Superior court of Campbell, by the said administrators of John Perkins against Robert Hawkins, who pleaded payment; on which issue was joined. On the 4th of April 1821, the death of the defendant was suggested, and the suit was revived, by consent', against Nancy Hawkins, his administratrix. On the 6th of April 1824 a jury was sworn in the case; but the plaintiffs suffered a nonsuit. Pending that suit, to wit, on the 6th of August 1821, the letters of administration which had been granted on John Perkins’ estate were revoked, and on the 8th day of the same month administration de honis non was granted to Richard Perkins, one of the three original administrators. On the 6th of April 1825, a second suit was brought on the bond; which was brought in the County court of Bedford by Richard Perkins, administrator de honis non of John Perkins, against Nancy Hawkins, administratrix of Robert Hawkins. The defendant pleaded payment and fully administered. The suit was regularly continued until March court 1828, when it was referred to arbitration by consent of parties. It was then regularly continued for an *652 award till the 27th day of October 1838, when, on the motion of the defendant, the order of reference was set aside ; and on the 29th of August 1839 a nonsuit was entered. It appears from a certificate of the clerk annexed to a copy of the record of the suit, that “ C. Anthony, the plaintiff’s attorney, having died, there was no counsel for the plaintiff at the time of rendering the judgment ” of nonsuit. On the 4th of December 1843, a third suit was brought on the bond; which was brought in the Circuit court of Bedford, but in September 1844 was, by consent of parties, removed to the Circuit court of Lynchburg. Before such removal, to wit, in Ajiril 1844, the defendant demurred generally to the declaration, and the plaintiff joined in the demurrer. On the 7th of November 1844, the defendant pleaded severally, payment by her intestate in his lifetime, and by herself since his death ; to which pleas the plaintiff replied generally ; and issues were thereon joined. At the same time, it would seem, though it is not expressly so stated in the record, an account of payments and setoffs was filed in the suit, such as had been filed in each of the two former suits, consisting of
Bal. of Benj. and Jno. Perkins’ bond, dated 12 Dec. 1811, $ 836 08
Bal. of 5 hhds. of tobacco, per rec’t 8 Nov. 1812, £ 99 6s. lid.
Off advances, 30 0 00
-- 231 16
Draft on Vilbert and Peryear, per rec’t 25 May 1813, 600 00
At November term 1845, the defendant, by leave of the court, added to the above three other ofisets, viz: 1st, a receipt of Benjamin Perkins to R. Hawkins for wheat receipts for 926 bushels 30 lbs.; 2d, the price of a lot sold by Hawkins to Benjamin Perkins in the year 1818, amounting to 3200 dollars; and 3d, the costs *653 and damages of the two former suits and nonsuits. At the same term the plaintiff, by leave of the court, amended his declaration, and by consent of parties the cause retained its place on the docket. A bill of exceptions was taken by the plaintiff to the opinion of the court, granting leave to the defendant to file an additional account of payments and setoffs. Also, at the same term, the defendant pleaded severally, payment by her intestate to John Perkins, and his first administrators, and each of them ; to which pleas the plaintiff replied generally, and issues were joined thereon. The trial of the issues commenced on the 4th and ended on the 12th of June 1846, when a verdict and judgment were rendered for the defendant. Eight exceptions were taken by the plaintiff and three by the defendant to opinions given by the court during the trial. An exception was also taken by the plaintiff to an opinion of the court overruling his motion for a new trial. A supersedeas having been awarded to the judgment, it is now to be determined whether or not the same is erroneous.
I will briefly consider the questions presented by the exceptions of the plaintiff, in the order in which they were taken.
The first exception was to the opinion of the court giving leave to the defendant to file an additional account of payments and setoffs. The reason assigned in the bill of exceptions for giving such leave was, “because of obtaining the justice of the case, and because the plaintiff had just amended his declaration and was, I think, sufficient. A defendant should be permitted to amend his pleadings, or add to his pleas, whenever justice requires it, if delay be not thereby occasioned, or a good reason be shown for not having done so sooner. 1 Rob. Pr. 231, and cases cited. Eo delay was occasioned by giving the leave in this case; the defendant being entitled to a continuance after the *654 plaintiff had amended his declaration. When leave was given the plaintiff to amend his declaration, the cause would have been remanded to rules for that purpose, but for the consent of the defendant that it should retain its place on the docket.
The second exception was to the opinion of the court overruling the objection of the plaintiff to the reading of the deposition of Littleberry Hawkins, because, as he alleged, “ there was no affidavit ever made before the clerk of the County court of Bedford for the issuing of a commission to take the said deposition.” The deposition was taken on the 12th of December 1829, to be read as evidence, de bene egse, in the second suit which had been brought on the bond, and which had been referred to arbitration. It was taken in pursuance of a commission bearing date the 28th of July 1828, and of a written notice served on the plaintiff, who was present when it was taken, and cross examined the witness. It was read before the arbitrators, and relied on in the argument of the counsel for the defendant, without any objection from the plaintiff; and no objection appears ever to have been made to it by him until the trial of the third suit on the bond in June 1846 ; and then the only objection was, that no affidavit had been taken for the issuing of the commission. The bare statement of the case is sufficient, I think, to show that the objection was rightly overruled by the court. It does not appear whether the commission was issued under the 15th or 19th sections of the act 1 Rev. Code 1819, p. 519 and 521. An affidavit was required by the former, but only an oath by th,e latter. If an affidavit was necessary in this case, it might well have been presumed, after the lapse of nearly 18 years, and under all the circumstances of the case, that it had been taken and lost. But it was not necessary to rely on that presumption as a ground for overruling the objection. It is enough that no ob *655 jection was made until after the deposition had been read as evidence before the arbitrators, and after the death of the witness. See Buddicum v. Kirk, 3 Cranch’s R. 293.
The third exception was to the opinion of the court overruling the objection of the plaintiff to the introduction of a record of the proceedings in a suit in the County court of Campbell, brought by Robert Hawkins against John Perkins, as evidence in this suit. Benjamin Perkins, who was a brother of John, seems to have had some connection with nearly all the offsets and payments claimed by the defendant; and it therefore became important for the defendant to prove that Benjamin was the agent of John. Accordingly, evidence was introduced by the defendant, which tended to prove that Benjamin, who was the older of the two brothers, commenced business in Lynchburg, probably about 1808, and John lived with him; that afterwards they did business in partnership till 1812, when it was dissolved ; after which they did business separately and occupied different houses in the same town; and that at the time of the execution of the bond on which the suit was brought, and before, and afterwards, they were in the habit of transacting business for each other, as paying or receiving money, settling accounts, and generally such business as an agent would execute in the absence of his principal. The record in question was introduced as further evidence of the agency of Benjamin for John; and was, I think, admissible evidence thereof. The suit of Robert Hawkins v. John Perkins was brought in February 1812, the year preceding that in which the bond of Hawkins to Perkins above mentioned, was executed. John Perkins was preparing to defend the suit, when Benjamin Perkins, on the 9th of November 1812, agreed and settled it for him with Hawkins; and on the 25th of January 1814, Hawkins gave an order to the clerk to dismiss the suit *656 at his costs. No objection appears ever to have been ina^e to this settlement by John Perkins, though he did not die until March 1816.
The fourth exception was to the opinion- of the court overra^n§ the objection of the plaintiff to the introduction of a deed from Robert Hawkins to Benjamin Perkins, dated 2d January 1818, conveying a lot of ground in Lynchburg, “ in consideration of 3205 dollars in hand paid;” which deed the defendant offered in evidence, “as a circumstance tending to show a presumption of payment of the bond sued on.” I think the deed was admissible evidence for the purpose for which it wTas offered and admitted. The lapse of twenty years, without explanatory circumstances, affords a presumption of law that the debt is paid, even though it be due by specialty. 2 Grreenl. Evi. § 528. In this case more than thirty-one years elapsed after the debt became due and before the institution of the last suit. It may be said that the institution and prosecution of the first and second suits are sufficient explanatory circumstances to repel the legal presumption. But jiayment may be inferred by the jury from circumstances coupled with the laj>se of a shorter period than twenty years. Id.; Best on Presumptions, § 137. And therefore on the trial of an issue made up on the plea of payment, evidence tending to show on the one hand that the creditor was in want of money, and on the other, that the debtor had the means of payment when the debt became due and afterwards, is admissible evidence to be weighed by the jury with the other evidence in the case. Accordingly, evidence was given, without objection in this case, tending to show that John Perkins was doing an extensive business, requiring all his means, and needed all the money he could get to carry it on; and that Hawkins “was a man of considerable property, small family, (one child only,) industrious and economical; made large crops, (from *657 one to two thousand bushels of wheat-,) and could have paid a debt of one or two thousand dollars in a year.” The deed in question tended to show not only that Hawkins had ample means to pay the debt after it became due and before the first suit was brought, but that during that period 3205 dollars of his money, a sum greatly exceeding the amount of the debt, was actually in the hands of Benjamin Perkins, one of the administrators of John. From which and the other circumstances of the case the jury might have inferred that the debt was either paid out of that money, or was not because it had been previously paid.
The fifth exception was to the opinion of the court overruling the objection of the plaintiff to the introduction, as evidence, of a receipt from Benjamin Perkins to Robert Hawkins, in these words and figures:
“ Lynchburg, 28th May 1813. Received from Mr. Robert Hawkins a draft on Messrs. Vilbert & Peryear, at 60 days after date, which when paid, will be placed to the credit of his bond to John Perkins.

Benj. Perkins.

Teste: John Moore.”
The signature of Benjamin Perkins was admitted to be genuine. Evidence was exhibited tending to prove that Benjamin Perkins was the agent of John, especially in his transactions with Hawkins ; that John applied to Hawkins for a draft on Peryear of Richmond, for 600 dollars, on account of said Hawkins’ bond for a larger amount given for flour bought by him of said John Perkins; that said Hawkins promised to call the next morning and give the draft; and that the draft mentioned in the receipt was paid at maturity. It did not appear that John Perkins ever objected to the draft as a payment, (being the draft mentioned in the defendant’s list of payments and setoffs.) The above state *658 ment is sufficient to show that the receipt was admissible evidence.
The sixth exception was to the opinion of the court overruling the objection of the plaintiff to the introduction, as evidence, of a bond of Benjamin and John Perkins for 836 dollars 8 cents, dated 12th December 1811, payable 25th December 1S12, with two credits endorsed thereon, the execution of which bond was proved; (being the same which is mentioned in the defendant’s list of payments and setoffs.) This bond was not a legal setoff to that on which this suit was brought, the debts not being mutual; but might, by the parties, have been applied as a payment on account of the latter; and the evidence strongly tended to show that it was so applied: at least the balance due thereon after deducting the two credits endorsed. There cannot be the least doubt about the admissibility of this bond as evidence, and I therefore deem it unnecessary to say anything more upon the subject.
The seventh exception was to the opinion of the court overruling the objection of the plaintiff to the introduction as evidence of a paper signed by Benjamin Perkins, in these words and figures ;
“I have this day agreed to settle the within five hhds. tobacco for my brother John, at 27s. for each and every hundred, and have paid Robert Hawkins 100 dollars in part thereof. The balance is due and payable in ninety days from the date hereof, after said Hawkins’ deducting charges, say carriage to Richmond, &c. &c.
Ben/. Perkins.
Witness: William Fowler.
Lynchburg, 8 Nov. 1812.”
Then follows a statement of the number and weights of the 5 hhds. of tobacco, weighing together 7359 lbs., at 27s., £99 6s. lid. (or 231 dollars 15 cents, which is *659 the first item in the defendant’s list of payments and setoffs.) This paper was admissible in connection with the evidence which was exhibited tending to prove that Benjamin Perkins was the agent of John. That this tobacco was in fact purchased by John Perkins, is farther shown by another paper introduced by the defendant as evidence, signed by John Perkins and admitted to be genuine, containing a statement of the numbers and weights of 5 khds. of tobacco, corresponding precisely with the statement above mentioned, having the name of Robert Hawkins at the head of it, and endorsed thereon these words :
“ Mr. Pox will please give Mr. Hawkins an account of sales of any part of the within tobacco that he may have sold. J. Perkins.”
The latter paper is not referred to in the bill of exceptions now under consideration; and seems not to have been offered in evidence until after that exception was taken. It is set out as part of the evidence in the cause, all of which is contained in the bill of exception to the opinion of the court overruling the motion for a new trial. But still I think it may be considered in determining the question raised by this exception, notwithstanding the rule laid down in some of the cases that facts stated in one bill of exceptions cannot be noticed by an appellate court in considering another; unless indeed the first bill of exceptions should be referred to in and adopted as part of the second. 1 Rob. Pr. 347, and cases cited. The reason of that rule does not apply, and therefore the rule does not extend to a case like this, in which one of the bills of exceptions contains all the evidence which was given on the trial. This is obvious from what was said by Judge Carr in delivering the opinion of the court in Brooke v. Young, *660 3 Rand. 106. In that case there were two bills of exception^ taken to opinions of the court given on the trial. In the first, it was stated that the evidence therein set out was all the evidence in the cause; and for that reason Judge Carr was of opinion that resort might be had thereto in deciding the question 'raised by the second bill of exceptions, in which a small part only of the evidence was contained. But he acquiesced in the opinion of his brethren who thought otherwise; “ because, although the evidence stated in the first bill might be all, when it was sealed, there might be other important facts brought forward afterwards; and because, by thus supplying the defects of one exception 'from another, we may shut out evidence material for the other party not noticed in either bill.” In this case the bill of exceptions containing all the evidence was taken after the trial was over, and therefore other important facts could not have been brought forward afterwards. Ro objection was made to the introduction of the latter paper. Considering the two papers together, the former was not only admissible evidence, but was favorable to the plaintiff. For while the latter tended to charge the plaintiff’s testator with the whole price of the tobacco, the former gave him credit for 100 dollars. And the price of 27s. fixed by the former does not appear to have been too high, nor ever objected to by the said testator. But with or without the latter paper, I think the formér was admissible evidenee.
The eighth exception was to the opinion of the court sustaining the motion of the defendant to exclude from the jury a draft of Benjamin Perkins on Anderson & Blair of Richmond, dated Lynchburg, January 16th, 1813, payable at sight to Samuel Garland or order, for 343 dollars 20 cents, endorsed by S. Garland to William Barrett, and receipted by the latter *661 12th February 1813 ; which draft was offered in evidence by the plaintiff, as tending to prove the correctness of the following item in the account of Hawkins with Benjamin Perkins, which was exhibited before the jury, viz : “ 1813, January 19th. My draft on Anderson & Blair, in favor of Samuel Garland, ¿£102 19s. 9d.” No evidence was exhibited or offered to connect Robert Hawkins in any way with this draft; which was therefore inadmissible evidence against him.
The ninth exception was to the introduction of the paper called “ wheat receipts,” and of the statements of the witness Miller in relation thereto, as evidence for any purpose in the case. The plaintiff had introduced and offered to prove before the jury an account of Robert Hawkins with Benjamin Perkins, amounting to ¿£ 350 11s. 4d., credited by ¿£ 91 12s. 3d., commencing 3d July 1811, and ending 3d June 1813 ; to which the defendant objected, but the court overruled his objection, and he excepted. This account was probably introduced to repel to some extent the effect of the bond of Benjamin and John Perkins to Hawkins, and the deed from Hawkins to Benjamin Perkins, which had been introduced by the defendant, and was,
I think, admissible for that purpose. The paper called “ the wheat receipts” was introduced as tending to show that the said account, or so much of it as the plaintiff might prove to be due, should be credited by the price of the wheat mentioned in the receipts, and that the balance really due on said account, if any, was much less than appeared on its face. The said paper contains two columns of figures, which may represent bushels and pounds of wheat; and if they do, the aggregate amount is 926 bushels 30 pounds ; annexed to which is a receipt in these words :
“ Lynchburg, October 1812. Received from Mr. Robert Hawkins receipts for the within as annexed, *662 agreeable to an agreement entered into this day. As witness my hand, as dated above.

Benj. 'Perkins.

Witness : Booker Shelton.”
The witness Miller, who was clerk and salesman of Benjamin Perkins in 1812 and for several years thereafter, stated that he “ would take the paper to be a wheat receipt, the figures of which are in the handwriting of Richard Perkins. The receipt is in the handwriting of Benjamin Perkins, whose.name it bears. Mr. Shelton, the subscribing witness, was once in the employment of Benjamin Perkins; the time not remembered. Mr. Shelton has long since been dead. His attestation to the receipt is his proper handwriting.” — “ The wheat receipt is not credited in the account.” — “ Everyregular merchant should have made the necessary entry on his books showing the exact transaction.” The witness made some other statements in relation to the paper, which need not be noticed. I think the paper and statements of Miller in relation thereto were admissible evidence.
The tenth and last exception was to the opinion of the court overruling the plaintiff's motion to set aside the verdict and judgment, 'and award him a new trial: 1st, because the court had suffered evidence to go to the jury on the trial which was illegal and improper, (referring to the evidence excepted to by the eight last mentioned exceptions;) and 2d, because the verdict was plainly contrary. to and unsustained by the evidence, all of which, on either side, was set out in a paper marked EEE, which, as the court certified and directed to be entered of record, contained all the facts proved on the trial of the suit. I have already disposed of the first ground of the motion in disposing of the previous exceptions, and am, therefore, of opinion that a new trial should not have been granted on that ground. The only remaining question is, whether *663 the second ground of the motion was well founded, and whether the verdict was plainly contrary to, and unsustained by, the evidence. Without whether the facts proved on the trial were properly certified, but considering all the evidence on either side (in which there does not appear to be any conflict,) as true, which is the most favorable view that can be taken of it for the exceptant, I am of opinion that the verdict was well warranted by the evidence. The defence relied on throughout this protracted litigation, which commenced in 1819 and has continued, with brief intervals, ever since, consisted of three items of payment or setoff which arose about the time of the date of the bond in May 1813, and were together about equal to its amount, the existence of which, as good demands at that time, was either admitted or proved beyond controversy, with each of which Benjamin as well as John Perkins was in some way connected ; and although John lived until March 1816, and Benjamin till a much later period, no attempt was ever made to show that either of these demands was otherwise settled than by applying them as payments of the bond. The form, terms and consideration of the bond, the manner of business and situation of the parties, all render it improbable that the bond, if not settled, would have been permitted to stand so long without suit or demand. But, besides all this, is the evidence of Littleberry Hawkins, that one of the said three items of payment or setoff, to wit, the bond of Benjamin and John Perkins to Hawkins, was to go to the credit of the flour bond of Hawkins to John Perkins ; that he was at the store of John Perkins with Hawkins when Perkins applied to Hawkins for a draft upon Peryear of Bichmond for 600 dollars on account of his said Hawkins’ bond for flour; that Hawkins remarked he did not think he owed him so much, and asked him if he had credited *664 the bond for the previous payment; he said he had not, but would do so, and if the draft exceeded the balance due on the bond he would refund to said Hawkins ; and that said Hawkins promised to call the next morning and give the draft.' It was proved that about ten days before the flour bond became due, such a draft was accordingly given by Hawkins to Benjamin Perkins for his brother John, and on account of the flour bond, and was paid at maturity: And, besides the evidence tending to show the general agency of Benjamin for John, it does not appear that the latter ever objected to the former’s agency in this matter, or pretended that he had not received the proceeds of the draft. I do not see how the jury could have found any other than a verdict for the defendant.
Upon the whole, I am for affirming the judgment.
The other judges eoncurred in the opinion' of Moncure, J.
Judgment affirmed.